E-FILED
Wednesday, 10 August, 2016  03:21:30 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES MILSAP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 -CV-3376 |
| | ) | |
| DR. THOMAS BAKER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff, proceeding pro se and incarcerated at Western Illinois Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging  Dr. Thomas Baker violated his Eighth Amendment rights when he was deliberately indifferent to his serious medical condition.  The matter is before the Court for ruling on the Defendants' Motion for Summary Judgment (Doc. 26).  For the reasons stated below, the motion is granted.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995).  The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997).  "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).  "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel,* 728 F.3d 7314, 734 (7th Cir. 2013)(internal quotation marks omitted).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986) *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

## FACTS

The Plaintiff is a fifty-three year old male who has been incarcerated at the Western Illinois Correctional Center since May 5, 2011.

Dr. Thomas Baker was the Medical Director at Western Illinois Correctional Center from April 4, 2011 to September 8, 2015. (Def. Mot., Bak. Aff., p. 1). The doctor first examined Plaintiff on May 19,

2011.  Plaintiff reported a prior neck surgery in 2005, and complained of left-side weakness due to a prior stroke. (Def. Mot., Bak. Aff., p. 2, Med. Rec. p. 210).  Although the medical record indicates Plaintiff reported a previous stroke which was treated in Quincy, Illinois, Plaintiff now denies he ever suffered from a stroke. (Def. Mot, Med. Red. P. 210)

Dr. Baker also saw Plaintiff on June 16, 2011, June 29, 2011, July 27, 2011, and August 26, 2011.  On each occasion, Plaintiff "had normal gait with 5/5 strength in both upper and lower extremities" but he was slightly weaker on his left side. (Def. Mot., Bak. Aff., p. 2, Med. Rec. p. 211, 213, 215, 216).

Plaintiff's next complaint of back pain or left-sided weakness was on June 12, 2013 during a sick call visit with a nurse.  The nurse provided ibuprofen, referred Plaintiff to a doctor, and instructed him to take warm showers, rest as needed, no lifting for five days, and no participation in sports activities. (Def. Mot., Bak. Aff., p. 2, Med. Rec. p. 238).

Dr. Baker examined the Plaintiff two days later.  Plaintiff complained of lower back pain which radiated down his legs.  He had mild left-sided weakness compared to his right side and walked

with a hunched posture favoring his left side.  Dr. Baker prescribed

muscle relaxers for back spasms, anti-inflammatories, ibuprofen,

and ordered a lumbar spine x-ray. (Def. Mot., Bak. Aff., p. 2, Med.

Rec. p. 234-240).

The x-ray did not reveal any fractures nor problems with the

disc height or spaces along his spine. However, the x-ray did show

signs of "normal osteoarthritis or degenerative joint disease." (Def.

Mot., Bak. Aff., p. 2, Med. Rec. p. 241).

A nurse saw Plaintiff on February 13, 2014, for his complaints

of chronic left shoulder pain.  She ordered an x-ray and another

follow-up appointment.  Plaintiff saw Dr. Baker due to an abnormal

finding in the x-ray revealing "an accessory articulation" from the

edge of the left shoulder to the deltoid.(Def. Mot., Bak. Aff., p. 3).

Dr. Baker examined the Plaintiff and ordered an x-ray of the right

shoulder for comparison.  Dr. Baker says he asked Plaintiff several

questions about the history of his shoulder pain, but Plaintiff was a

"poor historian and would not answer questions" to assist in

pinpointing the cause of his complaints. (Def. Mot., Bak. Aff., p. 3)

Plaintiff simply reported he had always had limited mobility with his

left shoulder.  The doctor believed this was consistent with a rotator

cuff injury or bicep tendinitis (Def. Mot., Bak. Aff., p. 3, Med. Rec. p. 248-251).

The additional x-ray revealed no sign of fracture or dislocation, and the abnormality in the left shoulder was not detected in the right shoulder.  Dr. Baker sent both x-rays to a radiologist for comparison and met again with the Plaintiff.

Dr. Baker explained to the Plaintiff the abnormal finding in his left shoulder was a congenital condition.  Therefore, the doctor explained he could help with the pain Plaintiff was experiencing, but he did not believe he could help with the chronic weakness Plaintiff was feeling because the doctor believed it was related to the previously reported stroke.(Def. Mot., Bak. Aff., p. 3-4, Med. Rec. p. 254-255).  Dr. Baker's treatment plan included an analgesic balm and an anti-inflammatory.

The doctor saw Plaintiff approximately two months later on May 14, 2014 when Plaintiff complained his left shoulder pain was getting worse.  Plaintiff believed it was due to being handcuffed behind his back for two hours during a lockdown.  Plaintiff also said the balm and anti-inflammatory medication were not helping.  Therefore, Dr. Baker prescribed a different anti-inflammatory and

discontinued the balm.  (Def. Mot., Bak. Aff., p. 4, Med. Rec. p. 259).

The doctor also referred Plaintiff for an M.R.I. of his left shoulder, but the referral had to be reviewed and approved by a group of doctors known as the collegial review board.  The board determined based on Dr. Baker's prior evaluations, Plaintiff was suffering from a chronic condition and referred him to a physical therapist. (Def. Mot., Bak. Aff., p. 4, Med. Rec. p. 261-263).   Dr. Baker informed Plaintiff of the referral on May 23, 2014.  He also continued the anti-inflammatory medication, prescribed tramadol for pain, and ordered a cane for Plaintiff's use. (Def. Mot., Bak. Aff., p. 4, Med. Rec. p. 263).

Dr. Baker met with the Plaintiff on June 6, 2014 for a follow-up appointment, and Plaintiff reported the tramadol was helping with his pain.  Plaintiff also returned the previously provided cane. (Def. Mot., Bak. Aff., p. 4, Med. Rec. p. 266-267).

Plaintiff met with the physical therapist on June 26, 2016 and returned for another follow-up appointment with Dr. Baker a few days later.  Plaintiff had been instructed to do home exercises twice a day for six weeks and was allowed the use of an ice bag

afterwards.  The medical records also indicate the tramadol prescription was discontinued at Plaintiff's request. (Def. Mot., Bak. Aff., p. 4-5, Med. Rec. p. 271).

Plaintiff did the physical therapy exercises from June 30, 2014 to October 21, 2014.  During this time, he met with Dr. Baker on two occasions and reported the exercises were helping.  The doctor noted Plaintiff has increased range of motion and his pain had partially subsided.  However, on October 21, 2014, Plaintiff returned claiming he hurt his shoulder, but denied any specific injury.  Plaintiff also reported the physical therapy had not helped. Dr. Baker therefore discontinued physical therapy and also stopped the anti-inflammatory prescription due to Plaintiff's complaints of constipation. Plaintiff was instead provided with an analgesic balm and ibuprofen. (Def. Mot., Bak. Aff., p. 5, Med. Rec. p. 280, 282, 302).

Plaintiff contends he never told Dr. Baker the physical therapy did not help.  Nonetheless, he says it did not help much, and it did not address his pain. (Resp., p. 4)

On December 1, 2014, another collegial review was conducted to discuss Plaintiff's history and condition.  An x-ray was ordered of

his cervical spine to determine whether there was any change in the hardware placed in Plaintiff's neck during his 2005 surgery.  The board also ordered evaluations of Plaintiff's left shoulder every six months since Plaintiff had not been able to provide a history of his condition. (Def. Mot., Bak. Aff., p. 5, Med. Rec. p. 304).

Plaintiff filed this lawsuit on December 5, 2014.

After the x-ray was completed, the collegial review board again discussed Plaintiff's condition on December 15, 2014.  The x-ray revealed severe narrowing between the C5 and C6 vertebra in his neck.  An Electromyogram (EMG) and a Nerve Conduction Velocity (NVC) test were ordered to determine if there was any nerve damage. (Def. Mot., Bak. Aff., p. 5, Med. Rec. p. 306).

The tests were conducted at an outside hospital on February 20, 2015.  The results were consistent with severe "radicular neuropathy," and, therefore, Plaintiff was referred for an MRI of his cervical spine which was approved by the collegial review board six days later. (Def. Mot., Bak. Aff., p. 6, Med. Rec. p. 399-400).

The MRI was scheduled for March 14, 2015 and May 21, 2015, but the MRI was not completed until June 2, 2015.  The first MRI was canceled because Plaintiff was claustrophobic.  The second

was canceled after Plaintiff ignored instructions not to eat after midnight. (Def. Mot., Bak. Aff., p. 6, Med. Rec. p. 319, 323, 328).

Dr. Baker reviewed the MRI results with Plaintiff on July 9, 2015 which revealed "spinal stenosis" or the narrowing of the spinal canal. (Def. Mot., Bak. Aff., p. 6, Med. Rec. p. 333, 412-413). Therefore, Dr. Baker recommended neurosurgery which was approved on July 13, 2015.

Dr. Baker met with Plaintiff on August 17, 2015 due to his complaints of shoulder pain.  The doctor discontinued the ibuprofen prescription and prescribed naproxen.

After a surgery consultation, Plaintiff was approved for surgery on October 12, 2015, and surgery was performed on December 17, 2015. (Def. Mot., Bak. Aff., p. 6, Med. Rec. p. 348).

## ANALYSIS

Dr. Baker argues the Plaintiff cannot demonstrate a constitutional violation.  Plaintiff must show he suffered from a serious medical need and the Defendant was deliberately indifferent to that need. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). "[A] finding of deliberate indifference requires evidence that the official was aware

of the risk and consciously disregarded it nonetheless." *Mathis v.*
*Fairman*, 120 F.3d 88, 91 (7th Cir. 1997) *citing Farmer v. Brennan,*
511 U.S. 825, 840-42 (1994)

Applying this standard to medical professionals, the Seventh
Circuit has stated that "[a] medical professional is entitled to
deference in treatment decisions unless no minimally competent
professional would have so responded under those circumstances."
*Sain v Wood*, 512 F.3d 886, 894-95(7th Cir. 2008) *quoting Collignon*
*v Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998).  For a
medical professional to be liable for deliberate indifference to an
inmate's medical needs, he must make a decision that represents
"such a substantial departure from accepted professional judgment,
practice, or standards, as to demonstrate that the person
responsible actually did not base the decision on such a judgment."
*Sain*, 512 F.3d at  895 (7th Cir.2008)(*internal citations omitted*).

Consequently, the Eighth Amendment is not a vehicle for
bringing claims of medical malpractice. *Snipes v. DeTella*, 95 F.3d
586, 590 (7th Cir. 1996).  Inadequate medical treatment due to
negligence or even gross negligence does not support an Eighth
Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th

Cir. 1987).  In addition, mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient. *See Snipes*, 95 F.3d at 592.

Dr. Baker argues the record clearly demonstrates he was not deliberately indifferent to Plaintiff's medical condition.  Dr. Baker notes Plaintiff first complained of left-side weakness and back pain in 2011.  However, there were no further complaints regarding this medical problem until June 12, 2013.  During this time, Plaintiff continued to see the doctor for other issues and Plaintiff knew how to request medical care.  Therefore, Dr. Baker argues Plaintiff did not yet present a continuing, serious problem.

The Court notes in Plaintiff's complaint, Plaintiff stated the medical problem which forms the basis of this lawsuit began on February 13, 2014. (Comp., p. 5).  However, in response to the dispositive motion, Plaintiff alleges he was left to suffer in pain for years.  Plaintiff further maintains Dr. Baker did not adequately respond to his complaints of pain and the doctor should have ordered an MRI the first time they met.(Resp.,p. 5)

However, Dr. Baker repeatedly examined Plaintiff in an attempt to determine the cause of his complaints.  Dr. Baker

ordered various x-rays and provided medications including anti-inflammatories, pain relievers, and an analgesic balm.  Dr. Baker changed those prescriptions based on Plaintiff's feedback.  Dr. Baker requested an MRI which was denied, but Plaintiff was provided physical therapy which Plaintiff admits provided some relief.  Ultimately, when Plaintiff claimed physical therapy was no longer helping and his pain had not subsided, additional x-rays were ordered.  However, before the results were available, Plaintiff filed this lawsuit.

Based on the additional x-rays and change in Plaintiff's condition, additional testing was ordered to assist in the diagnosis and treatment.  Plaintiff ultimately received an MRI, a surgical consult, and surgery.

The record before the Court demonstrates Dr. Baker was not deliberately indifferent to Plaintiff's condition, but instead continued to evaluate and treat Plaintiff based on his examinations and the information Plaintiff provided. *See Haley v. Feinerman,* 168 Fed. Appx. 113, 117 (7th Cir.2006) (holding a doctor's four-month delay in surgery that caused the surgery to be more difficult did not evince deliberate indifference because further medical examinations

were being conducted during that time and the undisputed
evidence showed that the doctor was simply "exercise[ing] his
medical judgment" and thus not "fail[ing] to respond to an obvious
injury"); *see also Plummer v. Wexford Health Sources, Inc.,* 609 Fed.
Appx. 861, 863 (7th Cir.2015) (holding that defendant doctors were
not deliberately indifferent because there was "no evidence
suggesting that the defendants failed to exercise medical judgment
or responded inappropriately to [the plaintiff's] ailments").

Furthermore, "[a]n MRI is simply a diagnostic tool, and the
decision to forego diagnostic tests is 'a classic example of a matter
for medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th
Cir. 2014) *quoting Estelle,* 429 U.S. at 107. More importantly, there
is no evidence before the Court demonstrating Dr. Baker's exercise
of medical judgment departed significantly from accepted
professional norms. *See Roe v Elyea,* 631 F.3d 843,857–58 (7th Cir.
2011); *Jackson v. Kotter,* 541 F.3d 688, 697–98(7th Cir. 2008).

In short, Plaintiff has demonstrated a disagreement with the
treatment he was provided, and as the Court has previously advised
Plaintiff, this is not sufficient to establish a constitutional violation.

*See* February 24, 2015 Merit Review Order, p. 5. Therefore, the motion for summary judgment is granted.

 IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted pursuant to Fed. R.Civ. P. 56. [26]  The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.  This case is terminated, with the parties to bear their own costs.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a

reasonable person could suppose…has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:  August 10, 2016

FOR THE COURT:

_____ s/ Sue E. Myerscough _____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE